IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LEWIS J. TETLOW, et al. | |
| **Plaintiffs** | |
| v. | Case No. 1:07-cv-00602 (JDB) |
| MARION C. BLAKELY, Administrator<br>Federal Aviation Administration | |
| **Defendant** | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiffs Lewis Tetlow, Richard Morgan and Joseph LoVecchio are employed as captains by USAir. Each has more than three decades of commercial flight experience; and Captains Tetlow and LoVecchio have military flight experience. Each possesses an "airman certificate" issued by Defendant Federal Aviation Administration (FAA), which enables him to pilot a commercial passenger aircraft (commonly referred to as a "Part 121 pilot"). Without FAA certification he may not do so; and, as a result, his employment will be terminated.[1]

Captain Tetlow reached his 60th birthday on April 2, 2007; and his employment is scheduled to be terminated on May 1, 2007. Captain Morgan will reach his 60th birthday on May 17, 2007 and Captain LoVecchio will reach his on January 18, 2008.[2]

Since 1960 Defendant has maintained and enforced a regulation (commonly referred to as

---

[1] Because the employer is acting in accordance with the FAA's requirements no action for age discrimination or otherwise will lie against any plaintiff's employer. As discussed more fully below, this leaves plaintiffs without an adequate remedy at law.

[2] Other similarly situated individuals have or will be joined as plaintiffs in this action. The name and date he or she will reach his or her 60th birthday and other pertinent data will be set forth in Plaintiffs' First Amended Complaint.

the "Age 60 Rule") which prohibits any person from flying as a pilot in commercial passenger service upon reaching his or her 60th birthday.

> "No certificate holder [airline] may use the services of any person as a pilot on an airline engaged in operations under this part if that person has reached his 60th birthday. No person may serve as a pilot of an airplane engaged in operations under this part if that person has reached his 60th birthday." 121 C.F.R. §121.383 c).

Plaintiffs, by bringing this action, seek to invalidate that regulation as arbitrary, capricious and otherwise contrary to law. 5 U.S.C. §706(2)(A) and (B). In the briefest form, they contend that basing pilot fitness on a calendar, rather than physical and mental fitness is irrefutably arbitrary.

While the FAA has always maintained that the rule is necessary to protect passenger safety that conclusion: (1) is premised on admittedly insupportable conclusions at the time the rule was promulgated; and is contrary to (2) the consensus of the scientific community, as reported by the FAA's own Age 60 Aviation Rule Committee; (3) statistical analysis conducted in 2003 by the FAA itself; (4) the public declaration of the FAA Administrator in January 2007; and (5) the statement made by the Associate Administrator for Aviation Safety in May 2006.

## FACTUAL SUMMARY

### A. THE FAA'S RATIONALE FOR THE AGE 60 RULE

The Age 60 Rule was first promulgated on the false claim that there was a medical rationale for prohibiting an individual from flying as a Part 121 pilot upon reaching his or her 60th birthday.

In a memorandum dated October 9, 1959 the Chief of the FAA Medical Standards Division informed the Civil Air Surgeon that at a meeting discussing a chart purporting to show the effects of aging on pilot proficiency and safety "[i]t was felt that this was an attempt to provide scientific or factual justification **in a subject area in which such justification is not**

**possible. . . . most comments had to do with reasons why the subject material itself was inappropriate and indefensible**." Emphasis added. Letter of H.L. Reighard, M.D., October 19, 1959. Attached hereto as **EXHIBIT 1**, and incorporated herein by reference.

Additionally, "[d]uring [the rulemaking] process, the agency accepted comments but did not hold hearings or present medical data for public or peer review. The Federal Aviation Agency [sic.], however, applied limited medical information relating to the general population. Numerous medical experts noted that the airline pilot population is a select group. The use of general population medical information, therefore, has been contested as inappropriate." *Report to the Federal Aviation Administration* by FAA Age 60 Aviation Rulemaking Committee, page 3. Attached hereto as **EXHIBIT 2**, and incorporated herein by reference.

More recently, the FAA has stated its belief that after reaching age 60 "there is a progressive deterioration of certain important physiological and psychological functions with age, [3] that significant medical defects attributable to this degenerative process occur at an increasing rate as age increases, and that sudden incapacity due to such medical defects becomes more frequent in any group reaching age 60." See: 60 FR 65977 (Docket No. 27264, December 20, 1995). Attached hereto as **EXHIBIT 3**, and incorporated herein by reference.

On November 23, 2006, the International Civil Aviation Organization (ICAO) Treaty became effective. It sets an international standard allowing pilots to fly up to age 65, provided there is another pilot under age 60 in the cockpit. The United States is a contracting state to the treaty. As set out more fully below, the FAA Administrator on January 30, 2007, announced that the FAA will consider a rule change to conform to ICAO treaty standards. Since then she has announced that the process may take 12-24 months.

On October 25, 2006, Dr. Claus Curdt-Christiansen, who from 1994-2005 served as

---

[3] As noted below, changes begin at age 20.

Chief of the ICAO Aviation Medicine Section, responded to FAA inquiries by stating, "the level of flight safety in the United States, although very high, is not higher than the level achieved in countries such as Japan and the European J[oint] A[viation] A[uthorities] States where the upper age limit has been 65 for several years now and where many older pilots continue their career beyond age 60. * * * [If the same standard is adopted for pilots certified by the FAA] [t]he high level of flight safety, for which the United States is known, will be maintained or perhaps even further increased." Age 60 Aviation Rule Committee Recommendations, Appendix 12. Attached hereto as **EXHIBIT 4**, and incorporated herein by reference.

### B. FAA FINDINGS REPORTED IN 2003

At the direction of Congress the FAA in 2003 issued four reports on pilot aging. None of those reports establish that pilots aged 60 or more present an unacceptable safety risk. They are **EXHIBITS 5** through **8** which are attached hereto and incorporated by reference.

### C. FAA'S FINDINGS REPORTED IN 2006

In a November 29, 2006 report by the FAA's "Age 60 Aviation Rulemaking Committee" determined:

(1) the Aerospace Medical Association (As MA) clearly stated the unified position of the aerospace medical community that "there is insufficient medical evidence to support restriction of pilot certification on age alone";

(2) the U.S. Equal Employment Opportunity Commission (EEOC) "has virtually eliminated age limits for pilots in all facets of U.S. aviation with the exception of part 121 commercial pilots" and that determining whether a person should continue to be certified as a pilot should be based on physical and mental fitness not a calendar;

(3) the National Institute on Aging, in a study conducted by Johns Hopkins University, reported "that chronological age by itself has little bearing on safety performance";

(4) there are eight "recent, relevant flight safety studies . . . on the issue of pilot aging as a safety factor" all of which concluded safety is not a function of age and that the

experience that comes with age is a positive factor;[4] and

(5) "[t]he success of real world operations (at airlines around the world, U.S. corporate aviation operators, and part 135 operators) all attest to the safe operations of pilots over the age of 60." *Report to the Federal Aviation Administration* by the Age 60 Aviation Rulemaking Committee, pages 8-9.  **EXHIBIT 2**

While the Committee was divided on the ultimate question of whether the Age 60 Rule should be changed or not, those opposing change cited no statistical, scientific or medical data, but instead called for further data compilation and analysis by the FAA – an excuse proffered year after year, while pilots like plaintiffs have been forced from their employment.

### D. INDEPENDENT SCIENTIFIC AND STATISTICAL STUDIES

As noted by the FAA's Age 60 Aviation Rule Committee, numerous authoritative studies not only have shown that age is not an indicator of a pilot's proficiency, but that a pilot who reaches age 60 (and beyond) may, in fact, be a better risk than a younger, less experienced pilot. The FAA responds with its oft stated mantra "there are no good scientific tests to measure the effects of aging on a person and research conducted in this area has been inconclusive." If that is true, how can one determine that a pilot must be stopped from flying at age 60 (or any other age)?  In the absence of a rationale basis, one could just as well pick a number from a hat and

---

[4] "[**1**] 1991: Lubner, et al.  In general aviation, **older pilots were at less risk** than younger pilots for both accidents and violations" [**2**]1994: Baker and Li. Analysis of flight time, age, and crash rate showed a **decrease in crash rate with age, when age correlated with greater experience**" [**3**]1994: FAA Hilton Study. The **accident rates** of older pilots with a first class or second class airman medical certificate **decline from age 40 through the early 60s**, but showed a slight increase from age 65 to age 69. [**4**] 1997: McFadden.  **Accident rates** of U.S. airline pilots **declined as pilot experience** (total flight hours and recent flight time) **and age increased**. [**5**] 1999: Rebok, et al. There appear to **be no significant age differences** in the pilot performance factors contributing to [general aviation] crashes. [**6**] 2001: Baker, et al. The percent of **crashes involving poor decisions or pilot error declined with age**. [**7**] 2002, Li et al. In a longitudinal study of pilots aged 45 and older **neither crash circumstances nor the prevalence and patterns of pilot errors changed significantly with age**. [**8**] 2003: Li, et al. These researchers followed a cohort of pilots for 11 years (pilots were between the ages of 45 and 54 at the start of the study). They found there was **no significant age-related increase in crash risk**, but that the risk of a crash decreased by about half among pilots with a total flight time of more than 5,000 hours."  Emphasis added. Id.

disqualify pilots once they reach that age – in other words, that randomly selected age is no less arbitrary than age 60.

Several studies and reports, summarized below (and attached hereto as **EXHIBITS 9 through 13**, and incorporated herein by reference) establish there is no basis for disqualifying pilots on their 60th birthday, which is, after all, just a date on a calendar.

1. **Aerospace Medical Association (As MA)**

Dr. Russell B. Rayman, Executive Director of the Aerospace Medical Association testified before the U.S. Senate Special Committee on Aging that at least 24 nations allow pilots to fly aircraft past age 60; and "[t]o our knowledge, there has been no adverse effect upon flying safety".

Dr. Rayman testified:

"Although medical sudden incapacitation is always a possibility (at any age), we believe it is a vanishingly small risk, even for air transport pilots who would be over age 60. . . . It might also be added that there has never been a US air carrier accident due to medical causes.

(As MA) asked three questions – all answered in the negative – in determining there is insufficient medical evidence to restrict pilot certification based on age alone:

Will air transport pilots have a higher aircraft accident rate?
Will there be significant performance decrement in the cockpit?
Will there be an unacceptable risk of inflight incapacitation due to medical causes?

2. **Johns Hopkins University 10-year Study on Aging and Crash Risk**

In "Age, Flight Experience, and Risk of Crash Involvement in A Cohort of Professional Pilots" (American Journal of Epidemiology: 2003; 157:874-880) Researchers Guohua Li and Susan P. Baker, et al. concluded (at page 880):

"Age, a measure of chronologic time, should by itself have little bearing on safety performance if variables indicating age-related changes, such as health status and flight experience, are taken into consideration."

> "**In this study, we found that crash risk was not significantly associated with advancing age**." Emphasis added.

3. <u>**10-year Study of Japanese Pilots Age 60 and Beyond**</u>

In a study of Japanese Pilots who were more than 60 years of age (aviation, Space and Environmental Medicine 2002; 73:485-487) it was concluded:

> With increasing age the physiological functions of air crew members deteriorate and the prevalence of diseases increases, but there are many health elderly air crew members who can pass the aeromedical examination. For the continued development of air traffic in Japan it is desirable that these health air crew members be employed appropriately." (page 485)

> "Mohler . . . reported the calendar age of 60 is no longer medically justifiable as an upper age limit for an airline pilot. Stuck, et al. . . . reported that through the improved medical certification and adequate performance testing age 70 would seem justified . . . . Almand also reported [Civil Aviation Medical Association] members' opinion that the age-60 limitation should be raised to age 65." (page 486-487)

> "In conclusion, 159 aged pilots flew 10-yr total of 84,000 h without accident since 1991 in Japan. . . . . This review suggests that air crew members who are deemed medically qualified by the official notice criteria are flying safely." (page 487).

4. <u>**El Al Experience With Pilots Age 60 and Older**</u>

El Al's Manager of Planning and Coordination Operations reported that 113 pilots age 60 or more flew "400,000 flight hours without displaying any problems in their semi-annual simulator and route checks. Nor were any problems reported on the flights themselves.

5. <u>**Findings of the International Civil Aviation Organization**</u>

The International Civil Aviation Organization, of which the United States is a member, made findings concerning pilot age and safety. More specifically, the ICAO's Air Navigation Commission issued a "Review of Replies to Questionnaire on Upper Age Limits for Pilots and Proposal to Amend Annex 1" (AN-WP/7982) and found:

> <u>"Worldwide experience of fatal accidents indicates that physical capacitation in two-pilot aircraft operations poses little risk to flight safely since the second pilot takes control and operates the aircraft to a safe landing.</u> In one contracting state, no accidents arose from 127 reported in-flight incapacitations in 19 millions flying hours over a 10-year period.

Since 1980, as far as the Secretariat is aware, there is no recorded fatal accident in the world with a 2-pilot airliner that has had cardiovascular incapacitation cited as a contributory cause despite the occurrence of many such incapacitations during this period." Emphasis added. Appendix C, page 10 (Secretariat's Comments)

"<u>While agreeing that all physiological and psychological functions deteriorate with age, beginning in the early 20s and culminating in natural death, the Secretariat cannot agree that there is a lack of objective information of the feasibility of changing the upper age limit from 60 to 63 or 65 years</u>." Emphasis added. Appendix C, page 9 (Secretariat's Comments)

### E. STATEMENTS BY FAA OFFICIALS

**1. <u>FAA Associate Administrator for Aviation Safety</u>**

Defendant's Associate Administrator for Aviation Safety conceded, however, the absence of a scientific basis for the Age 60 Rule :

"The Federal Aviation Administration (FAA) recognizes that science does not absolutely dictate what age is most appropriate for retirement. While age 60 is within the age range during which sharp increases in disease mortality and morbidity occur, there is no absolute, scientific formula that may be readily applied to predict **progressive anatomic, physiological, and cognitive decline associated with aging – it is variable in severity and onset among individuals**. * * * The FAA recognizes that individuals over age 60 may be well-qualified, experienced and safe pilots." Emphasis added. Letter of Nicholas A. Sabatini, Associate Administrator for Aviation Safety, to George Simmons, dated May 4 2006. **EXHIBIT 14**.

**2. <u>FAA Administrator</u>**

On January 30, 2007, FAA Administrator Marion C. Blakely in a speech delivered in her official capacity to the National Press Club conceded that the Age 60 Rule cannot be justified on the basis of safety; and unequivocally declared that "[t]he objections of the past don't cut it anymore." In pertinent part she stated:

"It's time to close the books on Age 60. The retirement for airline pilots needs to be raised.

* * *

Why the change? **First, medically speaking, there are no scientific studies to say, "Don't do this." In fact, as we'd all agree, medical science is in the place where we're all living longer and healthier. And that includes the cockpit**.

**Back in 1959, the average lifespan in the U.S. was 69 and a half. Today, it's more than 77.** And if there's a group of employees in better shape than airline pilots, generally speaking, they're not coming to mind right now — well, maybe the Bears and the Colts.

**Plus, there's the added protection of a medical exam every six months specifically tailored to aviation**, conducted by a professional who's specifically trained to address the kind of medical conditions that'd affect the ability to fly.

For the doubters among us, **there's also the check ride. Every six months, these folks are tested by a taskmaster who makes damn sure that the i's are dotted and the t's are crossed.** Our check airmen are the cream of the crop in the pilot community and their job is to make sure that all pilots are up to the job. Given our safety record — we're in one of the safest periods in history — I'd have to say that the pilots and those who check their performance are getting it done.

There's a major equity angle to this issue as well. Under our current rules, we will have captains older than 60 carrying Americans on foreign carriers originating overseas, from countries such as Canada, Australia, Israel, Japan — about three dozen countries overall. They'll be coming here, picking up Americans, and then flying them elsewhere. So you have to ask:  It's safe to fly with foreign pilots on our shores, but it's not safe with our own?

It's not as if we don't have some experience with this, because in fact, we do. Back in 1995, when the agency brought small commuter operators up to the same standards as the majors to form "one level of safety," **we allowed about 200 pilots over the age of 60 to continue to fly, grandfathered in for about four years. There were no medical events, no safety events, nothing to show that group couldn't fly above age 60.**

And now, I'd like to turn to the most compelling reason. Like the pilot on the West Coast who wrote me the letter, the fact of the matter is that there's a heckuva lot of experience behind those captain stripes, and we shouldn't have to lose it as early as we do. **I want our older captains to be around longer to help the younger pilots rising up through the ranks.**

\* \* \*

"I read an article in the San Francisco Chronicle earlier this month that particularly struck me. I'm going to quote a pilot mentioned in the article:

"When I started," he says, 'the World War II guys were still flying.' He's talking about the senior pilots in the 1960s. **"They were chain smokers, drank hard liquor, never exercised. Now, almost no one does those things. Plus, we get random alcohol tests.** We have to pass rigorous physicals twice a year from doctors who specialize in aviation."

"As I see it, he's precisely on point. We're moving forward because it's a change whose time has come. **The objections of the past don't cut it anymore.**"

Emphasis added. Marion C. Blakely, "Experience Counts", Speech to The National Press Club, January 30, 2007. **Exhibit 15**, attached hereto and incorporated herein by reference.

## ARGUMENT

There are several reasons why the Age 60 Rule is arbitrary and capricious within the meaning of the Administrative Procedures Act:

**1. It is axiomatic that a rule is arbitrary if the factor upon which it is premised does not achieve its ostensible purpose.**

Black's Law Dictionary (Revised 4th Edition) defines arbitrary, *inter alia*, as "without adequate determining principle; not founded in the nature of things; nonrational; . . .tryrannical;' despotic . . . [w]ithout fair, solid and substantial cause . . . ."

**2. The predicate of the Age 60 Rule is to ensure safety; but there is (as the FAA concedes) no scientific evidence that forcing pilots out of the cockpit at that age would likely result in greater safety or that allowing them to fly beyond that age would likely decrease safety at all, let alone below an acceptable level.**

The FAA has conceded that "age alone is not the best indicator of a pilot's proficiency", yet it has steadfastly maintained a rule based on age alone. Age is no more than a date on a calendar. And there is no evidence that all pilots at age 60 present an unacceptable safety risk. Yet the FAA uses this arbitrary marker, and not individual assessment to disqualify pilots.

In defense, the FAA repeatedly claims that it lacks data that would establish that pilots age 60 and older present acceptable risks. This is wrong for two reasons: (1) the burden is on the

FAA to establish that older pilots present an unacceptable risk from which the public must be protected; and (2) the data is readily available (and is part of the record in this case). In saying this, it is emphasized that the FAA from the inception of the rule in 1960 has never presented medical and statistical data to support its claim.

> **3. It is the avowed purpose of Congress that individuals not be denied employment or the benefits of employment because of arbitrary characteristics, including, but not limited to, age.**

Plaintiffs do not claim that the Age Discrimination in Employment Act (ADEA) prohibits the FAA from promulgating an age-based rule. As the Court of Appeals for this circuit noted in *Federation of Professional Pilots v. FAA*, 326 D.C. App. 157, 118 F.3d 758 (D.C. Cir. 1997) the ADEA prohibits employers from discriminating against employees age 40 or older and the FAA, in its rule making capacity, is not acting as an employer. But Congress, through the ADEA, instructs us that age-based criteria are presumptively arbitrary – as are other personal characteristics. Absent a showing that chronological age relates to the performance of one's job it is nothing more than a marking of the passage of time, i.e. an arbitrary marker unrelated to assuring safety.

To pose a rhetorical question: If the FAA promulgated a rule setting different age disqualifications for other categories of pilots would it be enough to assert that if there is statistical evidence of earlier onset of heart disease, stroke and reduction in cognitive function in Group "A" than in Group "B"? [5]

---

[5] Statistics compiled by the American Heart Association demonstrate differences in the age of onset and prevalence of such based on sex, race and economic status. **Exhibits 16 through 19.**

**4. Congress did not find it necessary to exempt consideration of age as necessary to enhance civil aviation safety.  How can Congress, on one hand, prohibit civil aviation employers from basing any employment decision on age alone (provided the person is at least 40 years old), but on the other hand, authorize an Executive Agency to compel those employers to remove individuals from their positions as pilots solely because they have reached a certain age.**

The FAA's claims that because it is mandated to protect safety it is permitted to promulgate a rule based solely on age without determining the level of risk, if any, that allowing pilots age 60 and older to fly. This is sophistry at its most cynical.  Congress, in enacting the ADEA, never intimated that an employer could discriminate on the basis of age absent a showing of how one's age would in the performance of his or her job adversely affect safety.  The Court of Appeals in *Professional Pilots* drew the wrong inference because it did not properly account for the expression of Congressional intent when it enacted the ADEA.  Had Congress intended age-only rules to be generally permissible because of presumptive risks to safety, it would have said so. Over time, only two exceptions have been carved out, *viz.*, tenured university professors and police and firefighters. By not carving out pilots, Congress implicitly acknowledged that age-only rules should not apply to those involved in commercial aviation.  If it did not exempt employers in commercial aviation from the prohibition against age-only rules, how can it be inferred that Congress intended the FAA's general mandate to protect safety to permit an age-only prohibition.

**5.  The United States, as a signatory to the ICAO treaty, permits the same individual to pilot the same aircraft of a non-U.S. common air carrier but prohibits that same individual from piloting the same aircraft of a U.S. common air carrier.**

No court has ever considered whether treating the same individual differently based solely on the "nationality" of his employer is arbitrary or capricious.  While the Court in

*Professional Pilots Federation, supra,* found the FAA had not acted arbitrarily and capriciously in treating American and non-American pilots differently, it did not address the issue of the same American pilot being treated differently based on the airline for which he or she is flying. While it may be said that the FAA is compelled to honor the international obligations of the United States, it cannot justify applying the Age 60 rule differently to the same individual as other than arbitrary. This is so because the same pilot is deemed to present an unacceptable safety risk when flying for a U.S. commercial air carrier, but will be treated as an acceptable safety risk if he or she flies the same type of air craft for a non-U.S. commercial air carrier. This is Orwellian double speak at its most foreboding.

### 6. The Age 60 Rule Violates the Rehabilitation Act

Further, the FAA regulation runs afoul of the Rehabilitation Act which protects an otherwise qualified individual from being discriminated against because of a perceived disability in a "program or activity conducted by any Executive agency" 29 U.S.C.. §794(a). *Federation of Professional Pilots, supra* at 763. This prohibition plainly applies to the FAA.

The FAA has stated its belief that after reaching age 60 "there is a progressive deterioration of certain important physiological and psychological functions with age, that significant medical defects attributable to this degenerative process occur at an increasing rate as age increases, and that sudden incapacity due to such medical defects becomes more frequent in any group reaching age 60." 60 FR 65977 (Docket No. 27264, December 20, 1995). **EXHIBIT 3**.

This is an admission that the FAA perceives pilots age 60 and older as significantly impaired in the major life activity of working as pilots, if not otherwise.

### 7. The Age 60 Rule Violates the Equal Protection Clause of the Constitution

Pilots age 60 and older solely are treated differently by the FAA solely on the basis of which commercial air carrier employs them. Those that fly for American companies are disqualified, while those employed by non-U.S. companies may continue to fly until age 65, provided other conditions set forth the ICAO treaty are met. There is no reasonable basis for this disparate treatment.

If no statutory claim will lie, plaintiffs are entitled to relief under the Equal Protection clause of the Constitution. Unlike a claim under the Administrative Procedure Act, the Agency is entitled to no deference when the claim is based on a Constitutionally guaranteed protection.

### CONCLUSION

Originally lacking a medical or statistical justification, the Age 60 Rule has long escaped its just fate. Given the present consensus of the scientific community that age alone is not predictive of any of the adverse consequences to safety claimed by the FAA, the admissions of two highly placed officials of the FAA, the disparate treatment of pilots age 60 and older solely on the basis of which commercial air carrier employs them and for such other reasons as are stated here or may otherwise become known to the Court, plaintiffs should be granted preliminary and permanent injunctive relief and such other relief as set forth in their Complaint.

Respectfully submitted,

Thomas J. Gagliardo
D.C. Bar No. 192575
Attorney for Plaintiff
8403 Colesville Road, Suite 860
Silver Spring, Maryland 20910-3312
301/589-1900 FAX 301/589-1985
gagliardo@workplace-law.net

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing was sent by first class U.S. Mail, postage prepaid, to the following:

> United States Attorney for the District of Columbia
> Civil Division
> Attorney for Defendant
> 555 Fourth Street, N.W.
> Washington, D.C. 20001
>
>     and
>
> General Counsel
> Federal Aviation Administration
> 800 Independence Avenue, S.W.
> Washington, D.C. 20591

on this **9**th day of **APRIL** 2007.

                                             Thomas J. Gagliardo