UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
LEWIS J. TETLOW, III, et. al,                       )
                                                    )
                                                    )
                  Plaintiffs,                       )
                                                    )
          v.                                        )  Case Number:  1:07CV00602(JDB)
                                                    )
MARION C. BLAKELY, ADMINISTRATOR,                   )
FEDERAL AVIATION ADMINISTRATION,                    )
                                                    )
                  Defendant.                        )
                                                    )
                                                    )
_____)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FOR LACK OF JURISDICTION OR, IN THE ALTERNATIVE,
FOR ENTRY OF SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS'
PRELIMINARY INJUNCTION MOTION**

## INTRODUCTION

Plaintiffs' First Amended Complaint should be dismissed for lack of subject matter

jurisdiction and for failure to comply with the applicable statute of limitations.  Simply stated,

plaintiffs filed suit in the wrong court at the wrong time.  Plaintiffs ask this Court to overturn a

longstanding Federal Aviation Administration ("FAA") air safety rule which prevents

individuals from piloting large commercial aircraft after the individual's sixtieth birthday, and

forbids domestic carriers from using pilots over sixty to pilot their large commercial aircraft.

This Court lacks jurisdiction to review plaintiffs' claims because the federal courts of appeals

have exclusive jurisdiction over challenges to FAA rules.  Even if the FAA could be sued in this

Court,  plaintiffs' claims would be time-barred because their complaint was filed over forty five

years after the expiration of the statutory sixty-day limit for challenging the relevant FAA rule. Accordingly, plaintiffs' complaint must be dismissed.

In the event that the Court determines it has jurisdiction over this matter, it should deny plaintiffs' preliminary injunction motions. As a threshold matter, neither motion was timely filed, and the Court will have authority to consider them only if plaintiffs file a motion for an extension of time and demonstrate that their tardiness was attributable to excusable neglect. If plaintiffs cure that procedural defect, their motions should be denied for failure to establish that they are entitled to the extraordinary remedy of preliminary injunctive relief. Plaintiffs do not seek to preserve the status quo, but instead want to alter it by having the Age 60 Rule suspended pending the resolution of their challenge to the merits of the Rule. Courts should not grant requests for such sweeping mandatory injunctive relief absent a strong showing that all four elements of the preliminary injunction standard have been met, namely that: (1) plaintiffs will suffer irreparable harm absent an injunction; (2) plaintiffs have a substantial likelihood of success on the merits; (3) the injunction will not harm third parties; and (4) granting the injunction would be in the public interest. Plaintiffs fail all four elements of that test. They will not be irreparably harmed. They have no hope of prevailing on the merits. Suspending this critical air safety regulation without considering whether any restrictions are appropriate and without considered analysis of the relevant safety concerns could cause serious risks to the millions of people that travel on commercial aircraft. A preliminary injunction also would undermine the public interest both in maximizing the safety of air transportation and in assuring that proper procedural safeguards established by statute and caselaw are met. For all those reasons, plaintiffs' preliminary injunction motions should be summarily denied.

## BACKGROUND

**A.    Statutory and Regulatory Background**

**1.    The Federal Aviation Act of 1958**

The Federal Aviation Act of 1958 ("Federal Aviation Act" or the "Act") directs the FAA to "promote safe flight of civil aircraft in air commerce."  49 U.S.C. § 44701(a).  The FAA must implement that mandate by prescribing "regulations in the interest of safety for the maximum hours or periods of service of airmen and other employees of air carriers" and by establishing "minimum safety standards" for air carriers.  *Id.* § 44701(a)(4), (b)(1).  The FAA "shall carry out [its duties] in a way that best tends to reduce or eliminate the possibility or recurrence of accidents in air transportation" and shall consider "the duty of an air carrier to provide service with *the highest possible degree of safety* in the public interest."  *Id.* § 44701(c), (d)(1)(A) (emphasis added).

The Federal Aviation Act specifies the method and timing for obtaining judicial review of FAA orders issued pursuant to that Act.  An individual "may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."  49 U.S.C. § 46110(a).  That petition for review "must be filed not later than 60 days after the order is issued."  *Id.*

**2.    The "Age 60 Rule"**

Pursuant to the Federal Aviation Act's statutory directive, in 1959 the FAA promulgated the rule plaintiffs challenge here (the "Age 60 Rule" or the "Rule").  That Rule provides that "[n]o certificate holder may use," and "[n]o person may serve as," "a pilot on an airplane

engaged in operations under [14 C.F.R. pt. 121] if that person has reached his sixtieth birthday."
14 C.F.R. § 121.383(c).[1]  The FAA adopted the Age 60 Rule because of concerns about the
danger posed to the public if the pilot of a large commercial aircraft suddenly became
incapacitated.  *See* 24 Fed. Reg. 5248 (June 27, 1959).  In that rulemaking, the FAA found "that
there is a progressive deterioration of certain important [physiological] and psychological
functions with age, that significant medical defects attributable to this degenerative process
occur at an increasing rate as age increases, and that sudden incapacity due to such medical
defects becomes significantly more frequent in any group reaching age 60."  24 Fed. Reg. 9767,
9767 (Dec. 5, 1959).  It also found that such incapacity cannot be predicted accurately.  *See id.*
Given the high risks at stake, the FAA therefore decided to prohibit persons from piloting large
commercial aircraft after reaching age sixty.  *See id.* at 9768.

    The Age 60 Rule has withstood numerous legal challenges.  The Second Circuit rejected
a challenge filed immediately after the rule was promulgated, concluding that the Rule had
"considerable support" and was a reasonable exercise of the FAA's authority to protect public
safety.  *Air Line Pilots Ass'n, Int'l v. Quesada,* 276 F.2d 892, 898 (2d Cir. 1960).  In 1974, the
D.C. Circuit upheld the FAA's decision to retain the rule, reasoning that the FAA's denial of a
petition to revoke the rule was reasonable "[g]iven the inconclusiveness of appellants' evidence
and the existence of contrary views."  *O'Donnell v. Shaffer*, 491 F.2d 59, 63 (D.C. Cir. 1974)
(footnotes omitted).  In 1995, after reviewing an extensive administrative record and recent

---

[1]Part 121 carriers were primarily those operating aircraft with a seating capacity of more
than 30 passengers as commercial common carriers.  *See* 14 C.F.R. § 121.1(a)(5)(ii) (1995).  Part
121 was amended in 1995, and certificate holders subject to Part 121 regulations are now
described in 14 C.F.R. pt. 119.  *See* 14 C.F.R. § 121.1(a).

studies, the FAA determined that it would not be appropriate to initiate a rulemaking to change

or repeal the Age 60 Rule because "the concerns regarding aging pilots and underlying the

original rule have not been shown to be invalid or misplaced."  60 Fed. Reg. 65,977, 65,980

(1995).  The D.C. Circuit again upheld the FAA's decision, finding that it was not arbitrary and

capricious, and did not violate the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C.

§ 621 *et seq.  See Professional Pilots Fed'n v. FAA*, 118 F.3d 758, 770 (D.C. Cir. 1997).

        In addition, several federal courts of appeals have upheld the FAA's denial of pilots'

petitions for individual exemptions from the rule.  *See, e.g.*, *Yetman v. Garvey*, 261 F.3d 664 (7th

Cir. 2001); *Baker v. FAA*, 917 F.2d 318 (7th Cir. 1990); *Keating v. FAA*, 610 F.2d 611 (9th Cir.

1979); *Gray v. FAA*, 594 F.2d 793 (10th Cir. 1979); *Rombough v. FAA*, 594 F.2d 893 (2d Cir.

1979); *Starr v. FAA*, 589 F.2d 307 (7th Cir. 1978).  To prevail on their petitions for review, the

pilots had to show "why the exemption would not adversely affect safety" or why it would

"provide a level of safety equal to that provided by the rule from which the exemption is

sought." 14 C.F.R. § 11.25(b)(5).  The pilots identified reports, studies, and other evidence that,

in their view, demonstrated that the current level of air safety could be maintained even if the

pilots were permitted to fly commercial planes after their sixtieth birthday.  In each such appeal,

the circuit court found that the pilots failed to satisfy their burden, and upheld the FAA's denial

of the exemption requests.[2]  *See Yetman,* 261 F.3d at 668;  *Baker*, 917 F.2d at 322-23; *Keating*,

610 F.2d at 613; *Gray*, 594 F.2d at 795; *Rombough,* 594 F.2d at 899-900; *Starr,* 589 F.2d at 314.

---

        [2] In *Aman v. FAA*, 856 F.2d 946 (7th Cir. 1988), the court remanded one issue in an
exemption denial case to the FAA for a more detailed response to petitioners' arguments
concerning the impact of pilots' experience.  After remand, the case returned to the Seventh
Circuit in *Baker*, and the court upheld the denial of the exemptions.

In so ruling, the courts conducted an inquiry into the reasonableness of the FAA's position on air safety that was nearly identical to the analysis the courts would have applied in a direct challenge to the Rule itself. *See Yetman*, 261 F.3d at 669 n.2 ("Were we to grant the petitioner's request for exemptions, resolving that the evidence relied upon by the FAA could not support the age limitation, we would *ipso facto* be voiding the Age Sixty Rule itself.").

### B.     The Instant Litigation

Plaintiffs Lewis J. Tetlow, III, Richard Morgan, and Joseph G. LoVecchio initiated this suit on March 29, 2007, seeking an order invalidating the Age 60 Rule. Plaintiffs allege that they hold "airman's certificates" issued by the FAA, and that they will soon lose their ability to fly planes for their employer USAir. Compl. ¶¶ 3, 5. Plaintiffs allege that Tetlow's sixtieth birthday was April 2, 2007, and that Morgan and LoVecchio will have sixtieth birthdays on May 21, 2007 and January 30, 2008, respectively. *Id.* ¶ 4. Plaintiffs dispute that safety concerns justify the Age 60 Rule, and ask this Court to overturn that rule as arbitrary and capricious agency action and on the grounds that the Rule is unconstitutional. *Id.* ¶¶ 21, 23.

On April 10, 2007, plaintiffs filed a preliminary injunction motion, arguing therein that the Court should order the FAA to cease enforcing the Age 60 Rule until it resolves the instant case on its merits. On April 19, 2007, plaintiffs filed a "supplemental" preliminary injunction motion, seeking the same relief as plaintiffs' first preliminary injunction motion, but including legal analysis that was missing from their first motion.

On April 20, 2007, plaintiffs filed a First Amended Complaint. The First Amended Complaint identifies several additional named plaintiffs. *See* First Am. Compl. Appendix 1. The First Amended Complaint repeats plaintiffs' allegation that the Age 60 rule is arbitrary and

capricious agency action and is unconstitutional.  *See* First. Am. Compl. ¶¶ 21, 23.  The First

Amended Complaint also alleges that the Age 60 Rule violates section 794(a) of the

Rehabilitation Act.  29 U.S.C. § 794(a); *see* First Am. Compl. ¶¶ 24-26.

## ARGUMENT

## I.     PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED.

### A.     This Court Lacks Jurisdiction to Hear Challenges to FAA Rules Such as the 'Age 60' Rule Challenged Here.

The Federal Aviation Act vests federal circuit courts of appeals with exclusive

jurisdiction over challenges to FAA orders.  Specifically, Section 46110(a) provides that

> "a person disclosing a substantial interest in an order issued by the Secretary of Transportation . . . or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator. . . may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business."

49 U.S.C. § 46110(a).  Accordingly, federal district courts lack jurisdiction to review FAA

regulations and orders.  *See O'Donnell v. Bond*, 510 F. Supp. 925, 928 (D.D.C. 1981) (noting it

was "well settled that review of any order of the [FAA] Administrator . . . must be taken in a

Court of Appeals"); *see also Telecommunications Research and Action Ctr. v. FCC*, 750 F.2d

70, 77 (D.C. Cir. 1984) ("[A] statute which vests jurisdiction in a particular court cuts off

original jurisdiction in other courts in all cases covered by that statute.").

The plain language of Section 46110(a) requires that plaintiffs' claims be dismissed for

lack of jurisdiction.  Plaintiffs challenge the lawfulness of the Age 60 Rule.  *See* First Am.

Compl. at 2 ("This is an action to declare the Federal Aviation Administration's 'Age 60 Rule'. .

. invalid and to preliminarily enjoin its enforcement"); *id.* ¶¶ 21, 23, 26.  That Rule was

published in the Federal Register after notice and comment rulemaking, and therefore is an

"order." The FAA issued the Age 60 Rule "pursuant to its mandate under the Federal Aviation

Act of 1958 to ensure air safety." *Professional Pilots Fed'n v. FAA*, 118 F.3d 758, 760 (D.C.

Cir. 1997); *see also Yetman v. Garvey*, 261 F.3d 664, 668 (7th Cir. 2001). It follows that the

Age 60 Rule is an "order . . . issued by the Administrator of the Federal Aviation Administration

with respect to [FAA's] aviation powers and duties." 49 U.S.C. § 46110(a). Thus plaintiffs

should have filed their action in the United States Court of Appeals for the D.C. Circuit or the

court of appeals in one of the circuits in which plaintiffs reside. *Bond*, 510 F. Supp. at 928.

They have no cognizable claims in this Court.

> **B.    Even If this Were the Proper Court in Which to Challenge the Age 60 Rule, Plaintiffs' Claims Would Be Time-barred Because the Complaint Was Filed Several Years After the Limitations Period Expired.**

> **1.    The Sixty-Day Limitations Period Has Expired.**

The Federal Aviation Act establishes a very limited time period for obtaining judicial

review of FAA rules. Specifically, "a person disclosing a substantial interest in an order issued

by the Secretary of Transportation . . . or the Administrator of the Federal Aviation

Administration with respect to aviation duties and powers designated to be carried out by the

Administrator" may file a petition for review "not later than 60 days after the order is issued."

49 U.S.C. § 46110(a). The court may allow a petition to be filed late "only if there are

reasonable grounds for not filing by the 60th day." *Id.*

The Federal Aviation Act's sixty-day limitations period governs Plaintiffs' claims.

Plaintiffs frame their complaint as an "action to declare as invalid and unenforceable a regulation

of the Federal Aviation Administration." First Am. Compl. ¶ 1; *see also* Mem. of Points and

Authorities In Support of Plaintiffs' Motion for Preliminary Injunction (Dkt. Entry 9) (presenting arguments for invalidation of the rule) (hereafter "PI Mem."); Plaintiffs' Supp. Mem. of Points and Authorities In Support of Plaintiffs' Motion for Preliminary Injunction (Dkt. Entry 11) (same) (hereafter "Supp. PI Mem.").  The FAA regulation establishing the "Age 60 Rule" was announced in a 1959 Order, and the FAA declined to reconsider the Rule in Orders issued in 1984 and 1995.  *See* 24 Fed. Reg. 9767 (Dec. 5, 1959); 49 Fed. Reg. 14,692, 14, 695 (Apr. 12, 1984); 60 Fed. Reg. 65977, 65986 (Dec. 20, 1995).  As noted *supra*, the FAA issued the Age 60 Rule pursuant to its statutory mandate to promote air safety.  *See Professional Pilots Fed'n*, 118 F.3d at 760.  Accordingly, plaintiffs' complaint is a petition for review of an FAA order, which had to be brought within 60 days of the issuance of that order.[3]

Plaintiffs' challenge to the Age 60 Rule plainly falls outside that sixty-day limitations period.  The FAA issued the Rule in December 1959 — making plaintiffs' challenge more than forty seven years late.  *See* 24 Fed. Reg. 9767; *see also Professional Pilots' Fed.*, 118 F.3d at 760 (noting issuance date).  Even if plaintiffs' complaint could be read as challenging more recent orders in which the FAA reaffirmed or declined to modify the Age 60 Rule, the most recent such order was issued over eleven years ago.  *See* 60 Fed. Reg. 65977, 65986 (Dec. 20,

---

[3]The general six-year statute of limitations for civil claims against the federal government, 28 U.S.C. § 2401, does not apply to plaintiffs' claims because section 2401 does not trump more specific statutory limitations periods.  *See Harris v. FAA*, 353 F.3d 1006, 1014 (D.C.Cir. 2004) (finding that APA challenges must be filed within six years "[u]nless another statute prescribes otherwise"); *see generally Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228-29 (1957) ("Specific terms prevail over the general in the same or another statute which might otherwise be controlling.").

1995).  Thus plaintiffs' claims are incurably late.[4]  *See Northwest Airlines v. FAA*, 675 F.2d 1303, 1306 (D.C. Cir. 1982) (concluding court could not consider plaintiff's attack on validity of FAA policy because petition for review was filed well after sixty-day period expired).  Therefore the First Amended Complaint should be dismissed.[5]

### 2.    There Is No Basis For Tolling Or Otherwise Extending the Limitations Period.

Plaintiffs have no "reasonable grounds" for filing their complaint so many years after the sixty-day limitations period expired.  Courts have allowed late-filed appeals in only two circumstances: (1) where there was uncertainty concerning the order's enforcement, *Aviators for Safe & Fairer Regulation, Inc. v. FAA*, 221 F.3d 222 (1st Cir. 2000); and (2) where the petitioner followed the FAA's advice to appeal the challenged decision to the National Transportation Safety Board ("NTSB"), *Reder v. Administrator of Fed. Aviation Admin.*, 116 F.3d 1261, 1263 (8th Cir. 1997); *see also Americopters, LLC v. FAA*, 441 F.3d 726, 733 (9th Cir. 2006) (noting prior precedent suggested attempts to exhaust remedies might toll 60 day period).  Neither exception applies here.

The Age 60 Rule unambiguously states that an individual shall not serve as a pilot of a

---

[4] Given how many years have passed since the FAA issued or reaffirmed the Age 60 Rule, plaintiffs' claims would be time-barred even if the general six-year statute of limitations for civil claims against the federal government applied to this case.  *See* 28 U.S.C. § 2401.  As noted *supra*, that limitations period does not apply to their claims.

[5] The Ninth Circuit has held that a party's failure to comply with that statutory limitations period deprives the reviewing court of subject matter jurisdiction.  *See Americopters, LLC v. FAA*, 441 F.3d 726, 732-33 (9th Cir. 2006).  Under that reasoning, dismissal under Federal Rule of Civil Procedure 12(b)(1) is appropriate.  However, the D.C. Circuit does not appear to have addressed whether the limitations period is jurisdictional.  In the event this Court disagrees with the Ninth Circuit, defendant requests that the First Amended Complaint be dismissed pursuant to Rule 12(b)(6) or, in the alternative, that summary judgment be entered on timeliness grounds.

commercial aircraft after his or her sixtieth birthday, and clearly directs commercial carriers like

plaintiffs' employer USAir not to use any individual as a pilot after the individual's sixtieth

birthday has passed.  Unless plaintiffs became commercial pilots before the age of fourteen, that

rule was in effect when they received their pilots' certificates and began piloting commercial

airplanes.  The FAA reaffirmed the Rule in 1995 — after plaintiffs already had become pilots,

*see* First Am. Compl. ¶ 3 (alleging plaintiffs have "decades of flying experience").  Thus

plaintiffs cannot reasonably claim to have been confused about the Rule's meaning or its likely

effects on them once they turned sixty.

Nor can plaintiffs claim that the sixty-day limitation period should be extended because

they have attempted to exhaust their administrative remedies in the wrong forum.  Plaintiffs do

not purport to have filed a petition for review to an administrative body or federal court within

sixty days of the promulgation of the Age 60 Rule, or even within sixty days of the FAA's 1995

decision not to revoke that rule.  Accordingly even if the D.C. Circuit were to find that improper

exhaustion may be "reasonable grounds" for delay in some cases,[6] that would not excuse the

tardiness of plaintiffs' complaint.

While plaintiffs may have become more conscious of the impending effects of the Age 60

Rule as their sixtieth birthdays drew nearer, that does not justify extending the limitations period.

*Harris v. FAA* — a D.C. Circuit case analyzing the time at which the general six-year federal

statute of limitations for challenging an agency decision begins to run — is instructive.  353 F.3d

---

[6] There are no published D.C. Circuit opinions addressing this issue.  Defendant respectfully submits that seeking relief in the wrong forum should not toll the Federal Aviation Act's sixty-day limitations period.  The circumstances in *Reder* were unusual in that the FAA told plaintiff to file a NTSB appeal.  Accordingly, that holding should not be expanded to include situations where a party simply misinterprets the Act's review provisions.

1006 (D.C. Cir 2004). The *Harris* plaintiffs challenged the FAA's decision to hire them as air traffic controllers at the GS-9 pay grade instead of a higher pay grade. The district court dismissed their claims as untimely because the FAA announced its intent to hire air traffic controllers at the GS-9 pay grade in a notice issued eight years before plaintiffs filed their complaint. *See Harris*, 353 F.3d at 1009. Plaintiffs argued that the limitations period began to run when they were hired, and that they filed their complaint within six years of that date.[7] *See id.* at 1011. The D.C. Circuit rejected plaintiffs' arguments, concluding that the 1993 FAA notice was a final agency action that triggered the running of the limitations period. *See id.* at 1011. The court also rejected plaintiffs' argument that they would not have had a ripe claim until they had been hired and "suffered [a] direct hardship," and thus should be allowed to challenge the policy more than six years after its issuance. *Id.* at 1011-12. The court concluded that plaintiffs' claims would have been ripe before they were hired because their APA claims presented purely legal questions and there already was a "prospect of hardship." *Id.* at 1012. Thus the *Harris* plaintiffs had no excuse for failing to file their challenge within six years of the FAA notice.

The D.C. Circuit's reasoning in *Harris* applies with equal force here. Parties who are or plainly will be aggrieved by an agency rule cannot defer their challenges until the eleventh hour. Instead, the limitations period begins to run as soon as the final rule is announced and its effects are clear. Here, that occurred in December 1959, when the FAA issued the Age 60 Rule. Had plaintiffs filed the instant challenge in 1960 or perhaps even 1995 (when the FAA declined to

---

[7] Plaintiffs also argued that the 1993 FAA notice was not a "final agency action" that would trigger the statute of limitations. *Harris*, 353 F.3d at 1010-11.

modify the Rule), the fact that plaintiffs' licenses would expire on their sixtieth birthday would have given them standing, and their legal challenges to the rules would have been ripe.  *See Harris*, 353 F.3d at 1012.  Having let that opportunity pass, plaintiffs now must await another FAA final order concerning the Age 60 Rule, and challenge the Rule in a federal appellate court within 60 days of the issuance of that order.[8]

In sum, plaintiffs' desire for immediate relief from the Age 60 Rule does not allow them to bypass the review procedures Congress established in the Federal Aviation Act.  The Act required plaintiffs to file a petition for review in a federal court of appeals within sixty days of the FAA's issuance of the Age 60 Rule.  Thus this is neither the time nor the place for plaintiffs to request that the Age 60 Rule be overturned.  This Court therefore must dismiss the First Amended Complaint or enter summary judgment for defendant.

## II.    PLAINTIFFS' PRELIMINARY INJUNCTION MOTIONS AND SUPPORTING MEMORANDA OF LAW ARE NOT PROPERLY BEFORE THIS COURT.

Plaintiffs failed to timely move for a preliminary injunction.  This Court's April 6**,** 2007 scheduling order established April 9, 2007 as the deadline for plaintiffs to file a preliminary injunction motion.  *See* Dkt. Entry 8.  Plaintiffs filed their initial preliminary injunction motion April 10, 2007.  *See* Dkt. Entry 9.  Plaintiffs filed another preliminary injunction motion April 19, 2007, ten days after the deadline and only four days before defendant's opposition was due.

---

[8] Indeed, the petition for mandamus attached to plaintiffs' original complaint suggests that plaintiffs already have sought appellate review in connection with their petitions for exemption from the Age 60 Rule.  *See* Compl., Exh. 1.  Of course, an appeal of an agency's denial of a petition for exemption is not the proper forum for challenging the merits of a rule issued forty seven years before the exemption was denied.  *See Yetman*, 261 F.3d at 668-69.  And if plaintiffs file a direct challenge to the Rule in a court of appeals, they will face the same timeliness issues that bar the claims they have raised in this Court.

*See* Dkt. Entry 11.  Neither late-filed motion was accompanied by a motion for an extension of time.

This Court has discretion, pursuant to Federal Rule of Civil Procedure 6(b)(2), to extend court-ordered deadlines even after they have expired.  But the party seeking the extension must file a motion making such a request.  *See* Fed. R. Civ. P. 6(b)(2) (authorizing extension "upon motion made"); *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 896 (1990) (emphasizing that motion must be filed); *Smith v. District of Columbia*, 430 F.3d 450, 456 (D.C. Cir. 2005) ("In the absence of any motion for an extension, the trial court had no basis on which to exercise its discretion [to consider an untimely motion to dismiss].").  That motion must establish that the late filing was due to "excusable neglect."  Fed. R. Civ. P. 6(b)(2).  Plaintiffs never filed a motion requesting an extension of the deadline for filing a preliminary injunction motion, and do not address the timeliness issue in either of their two preliminary injunction motions.  Accordingly, neither motion is properly before the Court.  *See Smith*, 430 F. 3d at 456.

## III.    IF THIS COURT CONSIDERS PLAINTIFFS' UNTIMELY PRELIMINARY INJUNCTION MOTIONS, IT SHOULD DENY THEM.

As demonstrated *supra*, plaintiffs' First Amended Complaint should be dismissed on jurisdictional and/or timeliness grounds.  The Court could then dismiss as moot plaintiffs' motions for a preliminary injunction.  *E.g.*, *Board of Supervisors of Fairfax Cty, Va. v. McLucas*, 410 F. Supp. 1052, 1056 (D.D.C. 1976) (declining to consider preliminary injunction motion because D.C. Circuit had exclusive jurisdiction over challenge to FAA order).  However in the event the Court reviews plaintiffs' preliminary injunction motions on the merits, it should deny them.  Plaintiffs cannot satisfy any of the four elements of the preliminary injunction standard.

### A.    The Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The moving party must show:

> (1) a substantial likelihood of success on the merits; (2) that it would suffer irreparable injury if the injunction were not granted; (3) that an injunction would not substantially injure other interested parties; and (4) that the public interest would be furthered by the injunction.

*Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006); *see also Al-Fayed v. Central Intelligence Agency*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1318 (D.C. Cir. 1998); *Taylor v. Resolution Trust Corp.*, 56 F.3d 1497, 1505-06 (D.C. Cir. 1995); *NTEU v. United States*, 927 F.2d 1253, 1254 (D.C. Cir. 1991); *Randolph-Sheppard Vendors v. Weinberger*, 795 F.2d 90, 110 (D.C. Cir. 1986). Those four factors "interrelate on a sliding scale and must be balanced against each other." *Serono Labs., Inc.*, 158 F.3d at 1318. However, if the moving party fails to show irreparable injury, the court may deny the preliminary injunction motion without reaching the other three factors. *See CityFed Fin. Corp. v. OTS*, 58 F.3d 738, 747 (D.C. Cir. 1995); *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006). A party's failure to establish any likelihood of success on the merits can be equally fatal. *Katz v. Georgetown Univ.*, 246 F.3d 685, 688 (D.C. Cir. 2001) (finding preliminary injunction "never will be granted unless a claimant can demonstrate a 'fair ground for litigation'").

The movant bears the burden of persuasion, and may obtain a preliminary injunction only upon a "clear showing" that it is entitled to that extraordinary remedy. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. That burden is even heavier where, as here, the preliminary injunction motion does not seek to preserve the status quo, but instead requests far-reaching mandatory relief. *Mylan Pharmaceuticals, Inc. v. Shalala*, 81 F.Supp. 2d 30, 36 (D.D.C. 2000).

Such motions are disfavored, and "the movant must show *clearly* that she is entitled to relief or that extreme or very serious damage will result." *Farris v. Rice*, 453 F. Supp. 2d 76, 78 (D.D.C. 2006) (emphasis added).

> ### B.  None of the Four Factors Of the Preliminary Injunction Standard Support Granting Plaintiffs' Motions.

Plaintiffs' first preliminary injunction motion contains no balancing analysis, and ignores most of the preliminary injunction standard.  Plaintiffs choose instead to pin their fate on the "likelihood of success" factor, devoting nearly their entire motion to a recitation of the evidence that purportedly draws the reasonableness and the constitutionality of the Age 60 Rule into question.  The motion cites no affidavits or other evidence concerning irreparable injury, and does not discuss the significant public safety concerns and risks to third parties that the proposed injunction would cause.  The Court could deny plaintiffs' first motion for that reason alone.  *See generally Chaplaincy of Full Gospel Churches*, 454 F.3d at 297 (noting movant bears burden of persuasion); *Cobell v. Norton*, 391 F.3d 251, 258 (D.C. Cir. 2004) (noting same).

Although the memorandum of law supporting plaintiffs' second "supplemental" preliminary injunction motion provides a more detailed analysis of the relevant standard, it still fails to demonstrate that plaintiffs are entitled to preliminary relief.  First, plaintiffs' imminent loss of their ability to pilot USAir commercial aircraft is not the type of injury that constitutes "irreparable harm."  Second, plaintiffs have no likelihood of success.  This Court lacks jurisdiction over challenges to FAA orders, and plaintiffs' claims are time-barred.  Plaintiffs' chances would be no better even absent those jurisdictional defects, because there is an overwhelming body of precedent affirming the lawfulness of the Age 60 Rule — including a D.C. Circuit opinion that is binding on this Court — and plaintiffs have not presented a single

plausible theory for this Court to hold otherwise.  Finally, suspending the enforcement of the

Age 60 Rule would deprive the public of an important safeguard against airplane accidents and

other incidents that might occur if a pilot becomes impaired or incapacitated in the cockpit.

Thus, granting plaintiffs' motions could cause substantial (indeed irreparable) harm to third

parties, and would undermine the public interest in air safety.

### 1.    Plaintiffs Will Suffer No Irreparable Harm Absent An Injunction.

The Court's analysis could begin and end with "irreparable harm."  No injunction may

issue in the absence of an "irreparable injury," no matter how strongly the other factors support

the movant.  *See CityFed Fin. Corp.*, 58 F.3d at 747; *Farris*, 453 F. Supp. 2d at 78.  As the D.C.

Circuit has recognized,

> The key word in this consideration is *irreparable*.  Mere injuries, however
> substantial, in terms of money, time and energy necessarily expended in the
> absence of a stay are not enough. The possibility that adequate compensatory or
> other corrective relief will be available at a later date, in the ordinary course of
> litigation weighs heavily against a claim of irreparable harm.

*Chaplaincy of Full Gospel Churches*, 454 F.3d at 298 (emphasis in original; internal quotations

omitted).

Plaintiffs have not shown that they will suffer an "irreparable" injury absent a

preliminary injunction.  It is true that plaintiffs will lose their ability to pilot large commercial

aircraft on the first day of the month following their sixtieth birthdays unless USAir opts to

violate the Age 60 Rule.  While that may be "imminent," it is not "irreparable."  Courts

repeatedly have held that the loss of employment is not an irreparable injury.  *Farris*, 453 F.

Supp. 2d at 79 ("[C]ases are legion holding that loss of employment does not constitute

irreparable injury"); *see also, e.g.*, *Ogunleye v. Arizona*, 66 F. Supp. 2d 1104, 1111 (D. Ariz.

-17-

1999) (finding no irreparable harm where plaintiff alleged she would lose her job absent an

injunction); *Ahmad v. Long Island University*, 18 F. Supp. 2d 245, 248-49 (E.D.N.Y. 1998)

(denying professor's argument that termination would constitute irreparable harm where plaintiff

could seek other employment and was not facing bankruptcy); *Nacarati v. Wilkins Tp., Pa.*, 846

F. Supp. 405, 409 (W.D. Pa. 1993) ("The loss of employment does not provide the requisite

showing of imminent irreparable harm."); *Williams v. State Univ. Of New York*, 635 F. Supp.

1243, 1248 (E.D.N.Y. 1986) ("In essence, the plaintiff must quite literally find [himself] being

forced into the streets or facing the spectre of bankruptcy before a court can enter a finding of

irreparable harm" based on loss of employment). Litigants typically can be reinstated if they

prevail on the merits, and the wages or other benefits lost in the interim are temporary economic

injuries that can be redressed through damages or other equitable relief. *See Farris*, 453 F. Supp.

2d at 79; *see generally Chaplaincy of Full Gospel Churches*, 454 F.3d at 298 (noting financial

injuries are "not enough" to support a finding of irreparable harm). They also may be able to find

alternative employment while the litigation is pending. *See Ahmad*, 18 F. Supp. 2d at 48-49.

Indeed, plaintiffs admit as much in their supplemental memorandum of law, stating that "any of

the plaintiffs in this action could . . . fly as captains of commercial passenger airplanes . . . for

British Airways . . . Aeroflot" or other carriers that are registered outside the United States.

Supp. PI Mem. at 7. They could also find employment with an on-demand carrier regulated

under 14 C.F.R. part 135 or a management company operating under the fractional ownership

rules of 14 C.F.R. part 91, subpart K; neither of these regulatory provisions has a pilot age

limitation.

       Plaintiffs' claim that they have no legal remedy against their employer, USAir, is

incorrect.  The Age 60 Rule does not require USAir to fire plaintiffs, but instead simply requires

USAir to relieve plaintiffs of their position as pilots after their sixtieth birthdays.  Other pilots

have brought ADEA claims against their employers for refusing to allow pilots over sixty to

transfer to positions that they could hold without violating the Age 60 Rule.  *E.g.*, *Baker v. Delta

Airlines, Inc.*, 6 F.3d 632 (9th Cir. 1993) (reviewing appeal of district court ruling in ADEA case

challenging Delta's refusal to permit pilots over sixty to downbid to second officer positions).

Nothing prevents plaintiffs from filing their own suit against USAir if USAir terminates

plaintiffs' employment.

Plaintiffs also make the mistaken assumption that an age discrimination case is their only

means of obtaining reinstatement on terms comparable to their current employment.  PI Mem. at

1; Supp. PI Mem. at 3.  In the unlikely event that plaintiffs prevailed on the merits of their

challenge to the Rule, they could be "made whole" in other ways.  For instance, if the FAA were

to reconsider its long-standing position on the Age 60 Rule and amend the regulations, an

employer could undertake a number of remedial measures, such as giving plaintiffs positions

with pay and seniority comparable to what plaintiffs currently receive, and issuing bonuses or

other incentives to redress plaintiffs' interim loss of benefits.[9]  The airline might deem such

measures a reasonable price to pay for continued goodwill with pilots and pilots' unions, and in

the wider community.  Likewise, an employer could potentially move an affected pilot to another

position within the company.  *See Baker*, 6 F.3d at 635 (discussing process by which airline

allowed pilots over sixty to serve as flight engineers ).  If a court invalidates the Rule, the court

---

[9]Of course, any remedy created by plaintiffs' employer would have to comply with the
requirements of any modified Age 60 Rule then in existence, and with other FAA regulations.

might exercise its considerable discretion to fashion equitable relief that redresses plaintiffs' temporary loss of employment.  *See generally Farris*, 453 F. Supp. 2d at 79 (describing courts' equitable powers to fashion remedies).  In sum, plaintiffs cannot show that a preliminary injunction is necessary to protect them from irreparable harm.

### 2.    Plaintiffs Have No Likelihood of Succeeding on the Merits.

A plaintiff that cannot demonstrate a significant likelihood of success on the merits has no hope of obtaining a preliminary injunction.  *See Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 182 n.2 (D.C. Cir. 2006); *Katz*, 246 F.3d at 688; *Apex, Inc. v. FDA*, 449 F.3d 1249, 1253-54 (D.C. Cir. 2006).  "[A]bsent a 'substantial indication' of likelihood of success on the merits, 'there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review.'" *Biovail Corp. v. FDA*, 448 F. Supp. 2d 154, (D.D.C. 2006) (quoting *American Bankers Ass'n v. Nat'l Credit Union Admin.*, 38 F. Supp. 2d 114, 140 (D.D.C. 1999)).  Neither of plaintiffs' memoranda of law provides a viable theory on which plaintiffs could prevail on the merits.  Thus the "likelihood of success" prong provides another basis for denying plaintiffs' preliminary injunction motions.

### a.    This Court Cannot Review Plaintiffs' Claims On The Merits, Let Alone Resolve Them In Plaintiffs' Favor.

Plaintiffs have no chance of success on the merits because their claims will not survive defendant's motion to dismiss.  As discussed *supra*, this Court must dismiss plaintiffs' challenge to the Age 60 Rule for two reasons: (1) the D.C. Circuit and other federal courts of appeals have exclusive jurisdiction to review FAA orders; and (2) plaintiffs' claims are time-barred.  Given that plaintiffs cannot litigate (let alone prevail on) their claims in this Court, they cannot obtain a preliminary injunction.  *See Tanner v. Federal Bureau of Prisons*, 433 F. Supp. 2d 117, 122 n.5

-20-

(D.D.C. 2006); *Power Mobility Coalition v. Leavitt*, 404 F. Supp. 2d 190, 205 (D.D.C. 2005)

("[T]he plaintiff is not likely to succeed on the merits because this Court is barred by statute

from having subject matter jurisdiction in this case").

> **b.     Plaintiffs Have Not Demonstrated That the FAA Acted Arbitrarily And Capriciously.**

Even if this Court could review plaintiffs' claims on the merits, plaintiffs would be

unable to satisfy the exceedingly high standard for having agency action declared arbitrary and

capricious.  "There is a presumption in favor of the validity of administrative action." *Bristol-*

*Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 216 (D.D.C. 1996).  Thus courts apply a

deferential standard under which agency action may be disturbed only if "arbitrary, capricious,

an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).  Agency

action must be upheld if it is rational, based upon relevant factors, and within the agency's

authority.  *See Motor Vehicle Mfrs. Ass'n of the United Sates, Inc. v. State Farm Mut. Auto. Ins.*

*Co.*, 463 U.S. 29, 42 (1983); *see also AT&T Corp. v. FCC*, 349 F.3d 692, 698 (D.C. Cir. 2003).

The Supreme Court has cautioned that "a court is not to substitute its judgment for that of

the agency." *Motor Vehicle Mfrs. Ass'n of the United States, Inc.*, 463 U.S. at 43.  In this

context, that means that "the court's role is not to reweigh the evidence" presented to the FAA

during the relevant rulemakings. *El Conejo Americano of Texas, Inc. v. Department of*

*Transportation*, 278 F.3d 17, 20 (D.C. Cir. 2002).  That caveat rings particularly true given the

"broad discretion" Congress has given the FAA to prescribe regulations and standards

concerning air safety.  *Jifry v. FAA*, 370 F.3d 1174, 1176 (D.C. Cir. 2004).

Plaintiffs' assertion that the Age 60 Rule is "arbitrary and capricious" is a non-starter in

this Circuit.  In *O'Donnell v. Shaffer*, the D.C. Circuit affirmed the FAA's denial of a petition to

revoke the Age 60 Rule, and found the FAA's decision to retain the rule reasonable "[g]iven the inconclusiveness of appellants' evidence and the existence of contrary views." 491 F.2d 59, 63 (D.C. Cir. 1974). The D.C Circuit rejected a similar challenge in *Professional Pilots' Federation v. FAA*, an appeal of two FAA decisions: an FAA order that denied a petition to repeal the Age 60 Rule and declined to institute a rulemaking to alter the Rule; and an FAA order extending the Rule to commuter airlines. 118 F.3d at 762. Like plaintiffs here, the Professional Pilots' Federation ("PPF") made various arguments that the FAA's retention of the Rule was arbitrary and capricious, asserting that the FAA: (1) failed to consider reasonable alternatives to the Rule; (2) made a decision that was "against the weight of the evidence;" and (3) provided no "reasoned basis" for treating older pilots differently than other pilots who may create safety risks. *Id.* at 762. The D.C. Circuit rejected all those arguments, and upheld the FAA's decision to retain the Rule and expand it to reach commuter airlines. The Court held, *inter alia*, that the FAA "afforded adequate consideration to the alternative of individualized testing" and other proposed alternatives to the rule, and accepted the FAA's conclusion that "[t]here are no tests . . . that can accurately determine the risk of an apparently healthy but older pilot suddenly being stricken by any one of the many potentially disabling conditions that may accompany advancing age." *Id.* at 765. The court also held that the FAA had legitimate grounds to allow individuals over sixty to pilot corporate aircraft, foreign-based commercial planes, and air taxis, while applying the Age 60 Rule to large commercial aircraft and commuter planes. *Id.* at 767-68. In addition, the D.C. Circuit disagreed with PPF's claim that the FAA had ignored evidence in the record that did not support the Rule. *Id.* at 768-69.

Plaintiffs try to avoid the import of *Professional Pilots Federation* and *O'Donnell* by

suggesting that the scientific community has now reached "consensus" that age alone is not predictive of one's capacity to pilot a plane safely, citing a variety of recent studies and other materials to support that proposition.  PI Mem. at 14 & Exhs. 2, 4-19.  Plaintiffs' reliance on "evidence" that was not before the FAA when it adopted the Age 60 Rule — or even in 1995 when the FAA declined to revoke the Rule — is entirely misplaced.  "It is well established that the focal point for judicial review under [the APA] should be the administrative record already in existence, not some new record made initially in the reviewing court."  *American Coke and Chems. Inst. v. EPA*, 452 F.3d 930, 945 (D.C. Cir. 2006); *see also Florida Power & Light Co. v. Lorioni,* 470 U.S. 729, 743-44 (1985) (limiting review of agency orders to administrative record); *Commercial Drapery Contractors, Inc. v. United States,* 133 F.3d 1, 7 (D.C. Cir. 1998) (same); *Professional Pilots Fed'n*, 118 F.3d at 765 ("[T]he FAA simply cannot be faulted for failing to explain away data that are not part of the record.").  Reviewing courts ask whether the agency's decision was rational in light of the evidence before it — not whether there is additional evidence that might compel a different result had the agency had an opportunity to consider it.  Thus the extra-record materials cited by plaintiffs should be disregarded by the Court.  *See* PI Mem. Exhs. 2, 4-19.[10]

The recent public statements by FAA officials also are extra-record, and in any event do not prove that the Rule is arbitrary and capricious.  *See* PI Mem. Exhs. 14, 15.  The Sabatini Letter does not dispute the FAA's prior determination that there is a correlation between age and progressive decline; it simply states that *some* pilots over sixty may be safe pilots.  *See* PI Mem.

---

[10]Although Exhibits 5 through 8 are FAA reports, all were issued in 2003, well after the relevant rulemakings.

Exh. 14. The FAA has not ignored that possibility, but "decided not to allow pilots to continue flying past the age of 60 because it did not know then, as it does not know now, of any way to identify a group of pilots over the age of 60 who are less likely than other equally venerable aviators to experience some loss of their faculties." *Professional Pilots Fed'n*, 118 F.3d at 768. The Blakely speech discusses Blakely's opinion that there may be alternative means of protecting the safety concerns that motivate the Age 60 Rule. *See* PI Mem. Exh 15. Again, that is nothing the FAA has not considered before, and the D.C. Circuit has affirmed the FAA's rejection of alternatives such as the periodic testing Blakely advocates in that speech. *See Professional Pilots Fed'n*, 118 F.3d at 764-66. In sum, these statements establish nothing more than that there is an ongoing debate on this subject, in which some individuals have drawn conclusions different than those the FAA reached when adopting and retaining the Age 60 Rule. However, such "difference[s] in view" do not render an agency decision arbitrary and capricious. *American Coke & Coal Chems. Inst.*, 452 F.3d at 941.

The letter Plaintiffs cite that arguably *was* in the administrative record also does not support reversal of the Rule. Plaintiffs' Exhibit 1[11] shows, at most, that commenters did not unanimously support the medical justifications for the Age 60 Rule or the methodology the FAA relied on when developing it. Again, the existence of differences in opinion does not warrant reversal of an agency decision under the arbitrary and capricious standard. *American Coke & Coal Chems. Inst.*, 452 F.3d at 941. The FAA determined that medical evidence in the record

---

[11]It is not clear whether exhibit one was in the administrative record, or if it is an extra-record description of comments received at the time the Rule was being considered. Defendant will assume for the purpose of argument that it was in the record. Defendant reserves the right to argue that this document constitutes extra-record material in the event the case proceeds on its merits after the preliminary injunction proceedings.

*did* support the adoption of the Age 60 Rule. *See, e.g.*, 60 Fed. Reg. at 65,981 ("While science does not dictate the age of 60 [for requiring pilots to retire] that age is within the age range during which sharp increases in disease mortality and morbidity occur."); PI Mem. Exh. 3 ("[T]here is a progressive deterioration of certain important physiological and psychological functions with age. . . [and] sudden incapacity due to such medical defects becomes more frequent in any group reaching age 60") (quoting 60 Fed. Reg. at 65,977); 60 Fed. Reg. at 65, 980 (concluding "concerns regarding aging pilots and underlying the original rule have not been shown to be invalid or misplaced"). Courts of appeals unanimously have upheld that conclusion. *See, e.g.*, *O'Donnell*, 491 F.2d at 63-64 (rejecting pilots' claim that there was insufficient evidence to support Age 60 Rule); *Quesada*, 276 F.2d at 898 (accepting FAA's conclusion that medical studies show that individuals over age sixty are at risk for sudden incapacitation); *see also Professional Pilots Fed'n*, 118 F.3d at 167-69 (rejecting argument that retention of Age 60 Rule was against the weight of the evidence).

*Professional Pilots Federation* forecloses plaintiffs' argument that the FAA arbitrarily treats pilots of foreign airlines differently than pilots of domestic airlines. The D.C. Circuit "agree[d] with the FAA that the mandate of [49 U.S.C.] § 40105 requires this inconsistency in the treatment of domestic and foreign carriers and their pilots." *Professional Pilots Fed'n*, 118 F.3d at 768. Plaintiffs cannot relitigate that issue in this Court.

### c.    The Age  60 Rule Neither Violates Nor Conflicts With Federal Statutes or the Constitution.

Agency action may be reversed if it is "not in accordance with law." 5 U.S.C. 706(2). Thus FAA rules will be set aside if they violate the Federal Aviation Act or other federal laws. *Nextwave Personal Communications, Inc. v. FCC*, 254 F.3d 130, 149 (D.C. Cir. 2001).

However no federal statute prohibits the FAA from adopting the Age 60 Rule.  Neither does the Equal Protection Clause of the Constitution.  Plaintiffs' contrary assertions are meritless.

There is no conflict between the Age 60 Rule and the Age Discrimination In Employment Act ("ADEA").  As plaintiffs admit, the ADEA's limitations bind only employers, PI Mem.at 11, and do not purport to reach age-related decisions made outside the employee/employer relationship.  In any event, the ADEA simply prohibits employers from making age-based employment decisions when age is not a "bona fide occupational qualification."  29 U.S.C.
§ 623(f)(1).  It cannot be stretched to prohibit a federal agency from enacting safety regulations based on medical evidence showing a correlation between age and safety risks.

The Age 60 Rule does not violate the Rehabilitation Act.  The Rehabilitation Act provides that "no otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under . . . any program or activity conducted by any Executive agency."  29 U.S.C. § 794.  As a  threshold matter, piloting commercial aircraft is not a "program or activity" conducted by the FAA, and it is questionable whether safety regulations can be characterized as an FAA "program or activity."  Second, plaintiffs have not established that the protections of the Rehabilitation Act apply to them.  Plaintiffs do not allege that they are disabled.  Plaintiffs also cannot establish that the FAA perceives them as disabled.  To be regarded as "disabled," an individual must be perceived as having a disability that "substantially limits one or more major life activities."  *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 481 (1999) (describing meaning of 'disabled' under the Americans with Disabilities Act).  Being

perceived as having a disability that prevents one from holding a particular job does not meet that definition. *See id.* at 492 ("To be substantially limited in the major life activity of working, then, one must be precluded from more than one type of job, a specialized job, or a particular job of choice."). Accordingly, plaintiffs' allegation that the FAA perceives them as "substantially impaired in the major life activity of working as pilots," PI Mem. at 13, is not enough to establish that the Rehabilitation Act covers their claims.

In any event, the Rehabilitation Act does not require the FAA to allow individuals that have significant medical impairments as a result of the degenerative process to serve as commercial pilots. Such individuals are not "otherwise qualified" to perform that job. To the contrary, as the FAA has found, allowing individuals at risk of sudden incapacity to pilot large commercial aircraft poses significant safety concerns. As noted *supra*, the FAA has found no effective way to distinguish between those individuals over sixty who may be able to pilot planes safely, and those who cannot. To the extent plaintiffs question the FAA's judgment about those matters, their argument fails for the reasons discussed *supra*.

Finally, there is no equal protection violation here. Age is not a "suspect classification." *Gregory v. Ashcroft*, 501 U.S. 452, 470 (1991); *Hedgepeth v. Washington Met. Area Trans. Auth.*, 386 F.3d 1148, 1154 (D.C. Cir. 2004). Accordingly, equal protection challenges to age-based determinations are subject to rational basis review. *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 63 (2000); *Gregory*, 501 U.S. at 470. Under that framework, the Age 60 Rule will withstand constitutional scrutiny unless "the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes" that courts must find the Rule "irrational." *Gregory*, 501 U.S. at 471.

The FAA has identified a very legitimate purpose, namely promoting air safety and protecting the public from the risks attendant to being a passenger in a plane operated by an individual at risk of sudden incapacitation due to a heart attack, stroke, or other severe medical problems. The D.C. Circuit and other courts have upheld the FAA's conclusion that medical evidence supports its assessment of those risks. *See O'Donnell*, 491 F.2d at 63-64; *Quesada*, 276 F.2d at 898; *Professional Pilots Fed'n*, 118 F.3d at 167-69. As the Supreme Court recognized when denying a constitutional challenge to a mandatory retirement provision, "[i]t is an unfortunate fact of life that physical and mental capacity sometimes diminish with age." *Gregory*, 501 U.S. 472. Concerns that those reductions in capacity may make some older individuals less than "fully capable of performing the demanding tasks" of their jobs provide a rational basis for requiring individuals to retire when they reach a certain age. *Id.*

### 3. Suspending Enforcement of the Age 60 Rule Would Cause Harm to Third Parties and Would Be Contrary To the Public Interest In Air Safety.

Plaintiffs' assertion that enjoining enforcement of the Age 60 Rule would have no adverse effects on third parties, and would promote the public interest, is remarkable. The Rule is firmly grounded in the FAA's duty to issue rules that "reduce or eliminate the possibility or recurrence of accidents in air transportation." 49 U.S.C. § 44701(c). As Congress recognized, maximizing air safety is a significant "public interest" concern. *Id.* § 44701(d)(1)(A) (requiring the FAA to consider carriers' duty to "provide service with the highest possible degree of safety in the public interest").

Given the strong public interest in air safety, and the vast number of third parties that ride commercial airplanes each day, these final two factors of the preliminary injunction analysis

strongly counsel against a preliminary injunction. Enjoining enforcement of the Age 60 Rule pending judicial review of plaintiffs' challenge would diminish the regulatory protections against air transportation accidents. Even plaintiffs do not dispute that *some* pilots over the age of sixty have medical conditions that make it unsafe for them to pilot large commercial planes or commuter aircraft. Additionally, plaintiffs do not suggest an alternative safety measure to address the overall increase in risk to the flying public associated with age-related physiological diminution. It is possible that the FAA may develop and adopt an alternative measure some time in the future. It has not yet determined that such action is justified. Thus the Age 60 Rule currently is the only method of ensuring that those individuals do not take the helm and risk accidents or other tragic incidents. The enforcement of such a critical public safety rule should be suspended only after a court finds the rule to be unlawful; and even then, the proper course is to first ensure that some other safeguard is in place.

Airplane accidents affect not only the passengers and airline employees involved in the accident, but also their families, friends, and communities. Thus any action that increases the risk of such accidents could have far-reaching and devastating consequences. It would be reckless to subordinate the interests of all those individuals to plaintiffs' desire to continue to serve as commercial pilots while the validity of the Age 60 Rule is being tested.

## CONCLUSION

For the foregoing reasons, plaintiffs' First Amended Complaint should be dismissed, and this Court should deny plaintiffs' preliminary injunction motions either on mootness grounds (due to dismissal of the complaint) or for failure to establish an entitlement to preliminary injunctive relief.

Dated: April 23, 2007                    Respectfully submitted,


                                         _____/s/_____
                                         JEFFREY A. TAYLOR, D.C. BAR # 498610
                                         United States Attorney


                                         _____/s/_____
                                         RUDOLPH CONTRERAS, D.C. BAR #434122
                                         Assistant United States Attorney


                                         _____/s/ Robin M. Meriweather_____
                                         ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                         Assistant United States Attorney
                                         555 Fourth St., N.W.
                                         Washington, D.C.  20530
                                         Phone: (202) 514-7198
                                         Fax: (202) 514-8780
                                         Robin.Meriweather2@usdoj.gov

                                         **Of Counsel:**

                                         REBECCA B. MACPHERSON
                                         Assistant Chief Counsel for Regulations
                                         Federal Aviation Administration
                                         800 Independence Ave, S.W.
                                         Washington, D.C. 20591
                                         Phone: (202) 267-7240
                                         Fax: (202) 267-7971
                                         Rebecca.Macpherson@faa.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April, 2007, I caused the foregoing Motion to Dismiss, Memorandum Of Points and Authorities In Support of Defendant's Motion to Dismiss and In Opposition to Plaintiffs' Motions for a Preliminary Injunction, and Statement of Material Facts to be filed and served via the Court's Electronic Case Filing system or, should I receive notice from the ECF system that electronic service was unsuccessful, to be served upon plaintiff by first-class mail, postage prepaid, addressed as follows:

Thomas A Gagliardo
The Gagliardo Law Firm
8403 Colesville Road Suite 860
Silver Spring, MD 20910

_____*Robin M. Meriweather*_____
ROBIN M. MERIWEATHER, DC BAR # 490114